UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BOARD OF TRUSTEES, NATIONAL STABILIZATION AGREEMENT OF THE SHEET METAL INDUSTRY TRUST FUND, *et al.*, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 1:15-cv-1564 (TSE/TCB) ) |
| PITT BALANCE CO., d/b/a PITT BALANCE COMPANY, | ) ) ) ) |
| Defendant. | ) ) |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiffs' Motion for Default Judgment (Dkt. 29).[1] For the reasons articulated below, the undersigned U.S. Magistrate Judge recommends that the Court grant Plaintiffs' motion.

I. BACKGROUND

A. **Procedural Posture**

Plaintiffs, the Boards of Trustees for the National Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI"); the Board of Trustees for the Sheet Metal Workers' National Pension Fund ("NPF"); the Board of Trustees for the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"); the Board of Trustees of the Sheet Metal

---

[1] The relevant filings before the Court include Plaintiffs' Amended Complaint ("Am. Compl.") (Dkt. 17); Plaintiffs' Motion for Default Judgment ("Mot. Default J.") (Dkt. 29); Brief in Support of Plaintiffs' Motion for Default Judgment ("Mem. Supp.") (Dkt. 30); Declaration of Kenneth Anderson Jr. ("Anderson Decl.") (Dkt. 30-1); Declaration of Diana M. Bardes ("Bardes Decl.") (Dkt. 30-2); and all attachments and exhibits submitted with those filings.

1

Occupational Health Institute Trust ("SMOHIT"); and the National Energy Management Institute Committee ("NEMIC") (collectively, "the Funds" or "Plaintiffs"), filed this lawsuit on November 23, 2015 pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor Management Relations Act of 1947 ("LMRA") against Pitt Balance Co., doing business as Pitt Balance Company ("Defendant"). (Dkt. 1.) On September 13, 2016, after obtaining the Court's leave, Plaintiffs filed an Amended Complaint. (Dkt. 17.) Plaintiffs brought two counts under Sections 502(g)(2) and 515 of ERISA, 29 U.S.C. §§ 1132(g)(2), 1145, and Section 301 of the LMRA, 29 U.S.C. § 185, to collect delinquent contributions, interest, liquidated damages, audit testing fees, and attorneys' fees and costs as a result of Defendant's violation of the applicable collective bargaining agreements and the Agreements and Declarations of Trust governing the Funds in this matter. Defendant failed to appear in this matter or otherwise timely respond to Plaintiffs' Amended Complaint.

Defendant then filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court of the Western District of Pennsylvania on November 3, 2016. (Dkt. 22.) The instant matter was automatically stayed pursuant 11 U.S.C. § 362(a). (Dkt. 23.) On May 1, 2019, the Bankruptcy Court entered its Final Decree, closing the Chapter 7 case. (Dkt. 26 ¶ 4.) The automatic stay in this matter lifted. On April 23, 2020, Plaintiffs filed a "Notice of Lifting of the Automatic Stay and Case Reopening." (Dkt. 26.) Because a corporation's obligations are not discharged under a Chapter 7 bankruptcy proceeding, Plaintiffs informed the Court that they intended to proceed in this matter and seek default judgment against Defendant.

Plaintiffs sought the Clerk's entry of default on April 28, 2020, and the Clerk entered Defendant's default on April 29, 2020. (Dkts. 27-28.) Plaintiffs thereafter filed the instant motion for default judgment and noticed the hearing for May 29, 2020. (Dkts. 29-31.) On May 27, the

Court entered an order postponing the hearing until July 10, 2020, due to the COVID-19 pandemic. (Dkt. 32.) Then, on July 6, 2020, the Court entered an order stating:

> [T]o proceed as cautiously and safely as possible, it is hereby **ORDERED** that <u>the Court will not hold a hearing on this matter</u>. Instead, the Court will allow any interested party to file an objection within two weeks of the date of this order. Accordingly, <u>any objections to Plaintiffs' motion for default judgment are to be filed with the Clerk's office by Monday, July 20, 2020 at 5:00 p.m.</u> The undersigned will then issue a Report and Recommendation concerning the default judgment without a hearing.

(Dkt. 33.) No interested party filed a timely objection with the Clerk's office. The Court now issues this Report and Recommendation to address Plaintiffs' motion for default judgment.

      **B.**     **Jurisdiction and Venue**

Before the Court can enter default judgment, it must have (1) subject-matter jurisdiction, (2) personal jurisdiction, and (3) proper venue.

*First*, the undersigned finds that this Court has subject-matter jurisdiction. A federal district court has subject-matter jurisdiction over ERISA and LMRA actions pursuant to the jurisdictional provisions in both statutes. *See* 29 U.S.C. § 1132(e)-(f) (conferring jurisdiction on the federal district court in the judicial district "where the plan is administered," regardless of the amount in controversy); 29 U.S.C. § 185(c) (conferring jurisdiction in cases by labor organizations on the federal district court in the judicial district where the labor organization "maintains its principal office" or in which "its duly authorized officers or agents are engaged in representing or acting for employee members"). Further, federal district courts have original jurisdiction over a civil action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, Plaintiffs assert claims pursuant to ERISA and LMRA, both federal statutes. Furthermore, the Funds are administered in Fairfax, Virginia. (Anderson Decl. ¶ 3.) This Court accordingly has subject-matter jurisdiction over the claims in this action.

***Second***, this Court has personal jurisdiction over Defendant. Due to ERISA's nationwide service of process provision, personal jurisdiction is proper if a defendant has sufficient national contacts with the United States and if jurisdiction comports with the Fifth Amendment. *See* 29 U.S.C. § 1132(e)(2) ("[P]rocess may be served in any other district where a defendant resides or may be found."); *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 443-44 (4th Cir. 2015) (citation omitted) ("Where a defendant has been validly served pursuant to a federal statute's nationwide service of process provision, a district court has personal jurisdiction over the defendant so long as jurisdiction comports with the Fifth Amendment."); *see also Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. McD Metals, Inc.*, 964 F. Supp. 1040, 1045 (E.D. Va. 1997).

Here, as discussed more below, Plaintiffs served Defendant pursuant to Federal Rule of Civil Procedure 4 and ERISA's nationwide service of process provision. (*See* Dkt. 5.) Defendant is a Pennsylvania limited liability company with its principal place of business located in Valencia, Pennsylvania. (Am. Compl. ¶ 14.) Plaintiffs also allege that Defendant "does business with the Funds that is sufficient to create personal jurisdiction over [Defendant] in this district." (Am. Compl. ¶ 14.) The undersigned is satisfied that Defendant has sufficient national contacts with the United States, personal jurisdiction comports with the Fifth Amendment, and this Court therefore has personal jurisdiction over Defendant.

***Lastly***, the undersigned finds that venue is proper in this Court. For ERISA and LMRA actions, venue is proper in the federal judicial district where the plan is administered. *See* 29 U.S.C. § 1132(e)(2) ("Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered."); 29 U.S.C. § 185(c) (in proceedings brought by labor organizations, "district courts shall be deemed to have

jurisdiction. . . in the district in which such organization maintains its principal office"). Here, venue is proper because the Funds are administered within the Eastern District of Virginia. (Anderson Decl. ¶ 3.) Moreover, venue is proper in a federal judicial district where a substantial part of the events or omissions giving rise to the action occurred. *See* 28 U.S.C. § 1391(b)(2). Here, venue is also proper in this Court because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district. (Am. Compl. ¶ 14.)

### C. Service of Process

Lastly, before the Court can render default judgment, it must be satisfied that the defaulting party has been properly served. Here, on December 15, 2015, Plaintiff's process server personally served Defendant. (Dkt. 5.) Specifically, the process server served the summons and complaint on Mary Quail, Defendant's "co-owner," at 232 Steiner Bridge Road, Valencia, Pennsylvania 16059. (Dkt. 5.) The undersigned finds that Plaintiff's service comports with Federal Rule of Civil Procedure 4(c) and (h)(1)(B), and therefore Plaintiffs properly served Defendant.

## II. FINDINGS OF FACT AND PROPOSED FINDINGS OF LAW

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011) (internal quotation marks and citations omitted)). Consequently, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim

upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) (citations omitted).

Plaintiffs request that the Court enter default judgment against Defendant under Counts I and II of the Amended Complaint. Based on the Amended Complaint, Plaintiffs' Motion for Default Judgment and the supporting Memorandum, the Declaration of Kenneth Anderson Jr., the Declaration of Diana M. Bardes, and the supporting documents submitted with those filings, the undersigned makes the following findings of fact and proposed findings of law.

A. **The Parties**

Plaintiffs are either employee-benefit plans/trust funds within the meaning of ERISA (SASMI, NPF, and ITI) or joint labor-management organizations (NEMIC and SMOHIT) that provide benefits to certain collectively-bargained sheet-metal workers. (Anderson Decl. ¶ 3; Am. Compl. ¶¶ 4-10.) The Funds are administered out of offices located in Fairfax, Virginia. (Anderson Decl. ¶ 3.) The trustees of SASMI, NPF, ITI, and SMOHIT collectively brought this lawsuit in the names of the respective trusts or plans on behalf of their participants and beneficiaries pursuant to Federal Rule of Civil Procedure 17. (Am. Compl. ¶ 13.)

Defendant is a Pennsylvania limited liability company with its principal place of business in Valencia, Pennsylvania. (Am. Compl. ¶ 14.) Defendant is an employer in an industry affecting commerce under 29 U.S.C. §§ 152(2), (6), and (7), and 29 U.S.C. §§ 1002(5), (11), and (12). (Am. Compl. ¶ 14.) Defendant employs employees represented for purposes of collective bargaining by the International Association of Sheet Metal, Air, Rail and Transportation Workers f/k/a the Sheet Metal Workers' International Association, Local Union No. 12 ("Union") and/or one or more of its affiliated local unions, which are labor organizations representing employees in an industry affecting interstate commerce. (Am. Compl. ¶ 15.)

**B.     Defendant's Obligations**

1.     *Collective Bargaining Agreement Obligations*

The Sheet Metal and Air Conditioning Contractors Association of Western Pennsylvania ("SMACNA") negotiated a collective bargaining agreement with the Union effective from July 1, 2010 through June 30, 2013 ("2010 CBA"). (Anderson Decl. ¶ 4, Ex. 1.) On April 26, 2012, Defendant executed a "Standard Form of Participation Agreement" binding it to the 2010 CBA and authorizing SMACNA to act as its collective bargaining representative. (Anderson Decl. ¶ 4, Ex. 2.) As part of the 2010 CBA, Defendant agreed to the following:

- "to be bound by the separate Agreements and Declarations of Trusts establishing the [Funds] and the separate agreements and declarations of trusts of all other local or national programs to which it has been agreed that contributions will be made"; and

- "to be bound by any amendments to said trust agreements as may be made from time to time and hereby designate as their representatives on the Board of Trustees such trustees as are named together with any successors who may be appointed pursuant to said agreements."

(Anderson Decl. ¶ 6, Ex 1.)

SMACNA and the Union then negotiated a second collective bargaining agreement effective from July 1, 2013 through July 1, 2016 ("2013 CBA"). (Anderson Decl. ¶ 4, Ex. 3.) Under the 2013 CBA, Defendant agreed to the following:

- "to be bound by, and act in accordance with, the respective Plan Documents, Agreements and Declarations of Trusts and/or Trust Documents establishing or governing the [ITI, NEMIC, SMOHIT, and NPF] . . . as applicable"; and

- "to be bound by any amendments to said trust or plan documents as may be made from time to time and hereby designate as their representatives on the Board of Trustees such trustees as are named together with any successors who may be appointed pursuant to said documents."

(Anderson Decl. ¶ 6, Ex. 3.) Finally, pursuant to both the 2010 CBA and the 2013 CBA (collectively, "CBAs"), Defendant agreed "to be bound by the NPF's Trust Document as

7

amended." (Anderson Decl. ¶ 6, Exs. 1, 3.)

Under these CBAs and the various Agreements and Declarations of Trust governing the Funds, Defendant had a variety of obligations. Defendant was obligated to (1) make full and timely payment of fringe benefit contributions to the Funds for all hours paid on behalf of its covered employees within the jurisdiction of the Union; (2) file monthly remittance reports detailing the employees or hours worked for which contributions were required; (3) produce all books and records upon the Funds' request, and to pay the cost of any audit; and (4) pay liquidated damages, late charges, interest, audit costs, and all costs of litigation (including attorney's fees) incurred by the Funds to collect any amounts past due and owing as a failure to comply with statutory and contractual obligations. (Am. Compl. ¶ 18; Anderson Decl. ¶ 5.)

If an obligated employer is delinquent in submitting its monthly remittance report and benefit contributions, it owes the delinquent contributions and the following amounts under the NPF's Trust Document:

> (1) Interest on any delinquent contributions at a rate of 8.5% per annum or 0.0233% per day, compounded daily until paid;
> (2) Liquidated damages equal to the greater of (i) $50.00 or (ii) 10% of the contributions due for each month of contributions that the employer failed to pay within 30 days after the due date, but pays before any lawsuit is filed;
> (3) Liquidated damages equal to the greater of (i) interest on the delinquent contributions at the above rate or (ii) 20% of the delinquent contributions owed upon commencement of litigation; and
> (4) All attorneys' fees and costs incurred by the Funds in pursuing the delinquent amounts.

(Anderson Decl. ¶ 11, Ex. 4.)

Finally, the CBAs state that "[i]f litigation is initiated against any Employer to collect delinquent contributions, the Employer shall be responsible for all delinquent contributions, interest on all delinquent contributions as defined above, liquidated damages of 20% of the total

delinquent contributions, reasonable attorneys' fees, auditor's fees, and litigation expenses." (Anderson Decl. ¶ 12, Exs. 1, 3.)

### 2. *Obligations Under ERISA and LMRA*

ERISA provides that an employer "who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. When an employer fails to make required contributions due under a CBA, ERISA outlines the damages that a court must impose on the employer. 29 U.S.C §1132(g)(2). The Court "shall" award:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

*Id.*

The LMRA also allows federal courts to provide redress for an employer's breach of a collective bargaining agreement. *See* 29 U.S.C. § 185(a). The LMRA provides for the enforcement of labor contracts—including provisions for interest and liquidated damages provided for by collective bargaining agreement or a trust agreement incorporated therein—that go beyond what ERISA expressly authorizes. *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. DCI Signs & Awnings, Inc.*, No. 1:08cv15 (JCC), 2008 WL 640252, at *3 (E.D. Va. Mar. 5, 2008) (citing *Keffer v. H.K. Porter Co.*, 872 F.2d 60 (4th Cir. 1989)). In other words,

between ERISA and LMRA, Plaintiffs can sue to enforce the terms of the CBAs and obtain relief for Defendant's nonpayment.

### C.     Defendant's Unpaid Contributions

In June of 2015, the Funds sent a letter to Defendant requesting to audit the period between January 2012 through December 2014. (Am. Compl. ¶ 24.) After obtaining Defendant's relevant business records, the Funds' auditors conducted the audit and issued a report in February of 2016. (Am. Compl. ¶ 24.) Defendant disputed the audit results and submitted additional documentation in May of 2016. (Am. Compl. ¶ 24.) The Funds confirmed the audit report and notified Defendant in July of 2016. (Am. Compl. ¶ 24.) The audit revealed that Defendant had underreported hours worked by covered employees. (Anderson Decl. ¶ 13.) As a result, Defendant underpaid its contributions to the Funds in the amount of $67,669.59 for the audit period between January 2012 and December 2014. (Anderson Decl. ¶ 14; Mot Default J. ¶ 8.)

As noted above, underreporting and underpayment of contributions further results in the assessment of interest, liquidated damages, and other fees against the violative employer. Plaintiffs further request that the Court award (1) $88,471.77 in interest calculated at the rate of 0.0233% per day, compounded daily, on the delinquent contributions (calculated through April 30, 2020); and (2) 88,471.77 in liquidated damages calculated at the greater of the interest due on the delinquent contributions, or 20% of the delinquent contributions, stemming from the audit period between January 2012 and December 2014. (Mot. Default J. ¶ 8; Anderson Decl. ¶ 15, Ex. 6.) Further, under the Collections Policy in the CBAs, Defendant is also responsible for the payment of $2,123.75 in audit testing fees. (Mot. Default J. ¶ 8; Anderson Decl. ¶ 15, Exs. 1, 3.) Finally, Defendant paid contributions late for certain months during the period of April 2013

through December 2014, incurring further liquidated damages in the amount of $2,611.37. (Mot. Default J. ¶ 8; Anderson Decl. ¶ 16.) In total, Defendant owes $249,348.25 to the Funds. (Anderson Decl. ¶ 16.)

### D.     Attorneys' Fees and Costs

Finally, Plaintiffs seeks attorneys' fees and costs in the total amount of $11,884.93 pursuant to ERISA, 29 U.S.C. § 1132(g)(2), and the terms of the Funds' trust documents. (Bardes Decl. ¶ 4; Anderson Decl., Ex. 4; *see also* 29 U.S.C. § 1132(g)(2) ("[T]he court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant.").)

Two law firms split the work in this matter: Jennings Sigmond, P.C. ("Jennings Sigmond") and Mooney, Green, Saindon, Murphy & Welch, P.C. ("Mooney Green"). (Bardes Decl. ¶¶ 2-3.) As to Jennings Sigmond, attorneys spent 61.9 hours on this matter at an hourly rate of $220.00 for partners, $195.00 for associates, and $80.00 for paralegals. (Bardes Decl. ¶ 5.) The attorneys' fees for Jennings Sigmond totaled $9,109.50. (Bardes Decl. ¶ 5.) Plaintiffs submitted the summary of legal services rendered by Jennings Sigmond in connection with this case, which includes the services performed and the time spent performing those services. (Bardes Decl. ¶ 5, Ex. 1.)

As to Mooney Green, Plaintiffs seek to recover $2,522.50 based on 13.4 hours of time at an hourly rate of $275.00 for partners and $150.00 for paralegals. (Bardes Decl. ¶ 6, Ex. 2.) Attorneys at Mooney Green drafted and filed the clerk's entry of default, the instant motion, and supporting documents. (Bardes Decl. ¶ 6.) In support of this request, Plaintiffs' counsel also submitted an itemized chart outlining the legal services performed, the attorney who performed the services, and the time spent on each item. (Bardes Decl. ¶ 6, Ex. 2.) Upon review of the

11

submitted billing entries by both law firms, the undersigned finds that the number of hours counsel expended on the matter is reasonable. Further, the undersigned finds that the hourly rates are consistent with reasonable rates charged in the Eastern District of Virginia for like matters. (*See* Bardes Decl. ¶¶ 7-8, Ex. 3.)

Plaintiffs finally seek $252.93 in costs, which include (1) $134.85 in process serving fees; (2) $37.24 in copying fees; (3) $17.54 in postage; and $63.30 in special delivery fees. (Bardes Decl. ¶ 5.) Upon review of counsel's submissions, the undersigned finds it appropriate to award Plaintiffs' requested attorneys' fees and costs in the total amount of $11,884.93.

## IV. REQUESTED RELIEF

Plaintiffs request that the Court enter default judgment in favor of Plaintiffs and against Defendant in the amount of $249,348.25, consisting of the following:

- $67,669.59 in unpaid contributions from the audit period between January 2012 and December 2014;
- $88,471.77 in interest (calculated through April 30, 2020) from the audit period between January 2012 and December 2014;
- $88,471.77 in liquidated damages from the audit period between January 2012 and December 2014;
- $2,611.37 in liquidated damages for the period between April 2013 and December 2014; and
- $2,123.75 in audit testing fees.

(Mot. Default J. ¶ 8.) Plaintiffs further request that the Court grant them $11,884.93 in attorneys' fees and costs. (Mot. Default J. ¶¶ 8-9.)

## V. R<small>ECOMMENDATION</small>

Upon review of the entire record in this matter, the undersigned recommends that the Court enter an order (1) granting Plaintiffs' Motion for Default Judgment (Dkt. 29), thereby entering default judgment in favor of Plaintiffs and against Defendant in the amount of $249,348.25 as listed above; and (2) granting Plaintiffs $11,884.93 in attorneys' fees and costs.

## VI. N<small>OTICE</small>

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

/s/
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

August 28, 2020
Alexandria, Virginia